IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

SANDRA DEE LAFLEN, )
 )
    Plaintiff, )
 )
v. ) Case No. CIV-15-348-BMJ
 )
CAROLYN W. COLVIN, Acting )
Commissioner of the Social Security )
Administration, )
 )
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Sandra Dee Laflen, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's denial of disability insurance benefits and disabled widow's benefits. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. The Commissioner has answered and filed the Administrative Record (AR), and both parties have briefed their respective positions. For the reasons stated below, the Commissioner's decision is reversed and remanded for further proceedings.

**I.    Procedural Background**

Plaintiff protectively filed applications for disability insurance benefits and disabled widow's benefits. AR 235-41, 283. The Social Security Administration (SSA) denied the applications initially and on reconsideration. AR 69, 71. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision dated August 20, 2013. AR 29-45. The Appeals Council denied Plaintiff's request for review. AR 1-4. Thus, the decision of the ALJ became the final decision of the Commissioner. It is this decision which is the subject of judicial review.

## II.     The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential evaluations process); *see also* 20 C.F.R. § 404.1520. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date, September 30, 2010. AR 32.

At step two, the ALJ determined that Plaintiff has the following severe impairments: diabetes mellitus, obesity, fibromyalgia, hypertension, systemic lupus, status post ventral hernias (two), panic disorder with agoraphobia, and dysthymic disorder. AR 32. At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 32-33.

The ALJ next determined Plaintiff's residual functional capacity (RFC) concluding she could perform light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit for about 6 hours during an eight-hour workday and can stand and walk for about 6 hours during an eight-hour workday. The claimant can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. The claimant cannot climb ladders, ropes, or scaffolds. The claimant can understand, remember, and carry out simple, routine, and repetitive tasks. The claimant can respond appropriately to supervisors, co-workers, and usual work situations, but have occasional contact with the general public.

AR 34.[1]

At step four, the ALJ found that Plaintiff could not perform her past relevant work including assistant manager of a retail store, receptionist/office assistant, and parts washer and

---

[1] *See* 20 C.F.R. § 404.1567(b) (setting forth requirements for light work).

inspector for quality control. AR 44. Relying on the testimony of a vocational expert (VE), at step five the ALJ concluded Plaintiff could perform other light, unskilled work including records clerk, plastics worker, and garment worker, and that these jobs exist in significant numbers in the regional and national economies. AR 45. The ALJ concluded, therefore, that Plaintiff was not disabled for purposes of the Social Security Act. *Id*.

### III. Issues Presented for Judicial Review

Plaintiff raises three issues for judicial review. First, Plaintiff claims that the ALJ improperly evaluated the medical evidence and specifically, failed to correctly evaluate the treating physician opinion of Dr. Michael Ramos. Second, Plaintiff claims the ALJ's credibility analysis is not supported by substantial evidence. Third, Plaintiff claims the ALJ's RFC determination is not supported by substantial evidence. Because the Court finds a remand is required as to Plaintiff's first claim of error, the Court does not reach the merits of the remaining claims. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (remanding for further proceedings due to the ALJ's failure to follow the correct legal standards in considering the claimant's treating physician opinion and declining to reach merits of claimant's challenge to RFC and credibility determinations as those issues "may be affected by the ALJ's treatment of the case on remand").

### IV. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003)

(quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V. Analysis

The record contains many references to Plaintiff's inability to afford medical care. As a result, much of the treatment she has received involves visits to the emergency room of local hospitals. However, since 2003 and continuing through the date of the ALJ's decision, Plaintiff has received care from her treating physician, Dr. Ramos.[2]

Dr. Ramos offered opinions as to both Plaintiff's mental and physical limitations. *See* AR 495 (Medical Opinion Regarding Residual Functional Capacity); AR 497 (Treating Physician Mental Functional Capacity Assessment Questionnaire). As to mental limitations, Dr. Ramos opined that Plaintiff "is unable to tolerate area's [sic] with crowds or loud noises" and "unable to handle stressfull [sic] situation's [sic] making it difficult for her to seek employment." AR 497. The mental assessment was completed in September 2012 and does not state the time period it covers.

---

[2] Most recently, Dr. Ramos noted Plaintiff's need for surgical evaluation due to hernias and her lack of insurance for such treatment. AR 476.

As to Plaintiff's physical limitations, Dr. Ramos opined that Plaintiff can stand, walk or sit a maximum of "[a]bout 2 hours" during an 8-hour day and lift and carry no more than 10 pounds occasionally. AR 495. He further opined that Plaintiff would be absent from work more than 3 days per month and that 25% or more of the time Plaintiff's symptoms would likely interfere with the "attention and concentration needed to perform simple work tasks." *Id.* Dr. Ramos opined that Plaintiff's limitations have existed for one year, i.e., from September 2010 through September 2011. *Id.*

If the ALJ had not rejected Dr. Ramos's opinions concerning Plaintiff's mental limitations, further testimony from a VE would be required to determine if any jobs exist that Plaintiff could perform.[3] And, if the ALJ had not rejected some or all of Dr. Ramos's opinions concerning Plaintiff's physical limitations, the VE testimony establishes no jobs exist that Plaintiff could perform and, therefore, that Plaintiff would be disabled.[4] Because the ALJ did not correctly apply the analysis governing the treating physician opinion of Dr. Ramos and aspects of the ALJ's analysis are not supported by substantial evidence, a remand is required.

---

[3] The Court notes that the ALJ did not present any hypotheticals to the VE concerning the mental limitations as set forth in Dr. Ramos's opinion. Should the ALJ determine on remand not to reject Dr. Ramos's opinion, the ALJ is reminded that the hypotheticals to the VE must match with precision a claimant's impairments borne out by the evidentiary record. *See, e.g., Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir. 1991) ("Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.").

[4] At the hearing, the ALJ provided a hypothetical to the VE which included, as alternatives, the limitations set forth in the physical residual functional capacity opinion of Dr. Ramos. *See* AR 67 (VE testimony); *see also* AR 495 (Dr. Ramos's opinion). The VE testified in response to the hypothetical that these limitations would eliminate all jobs. AR 67. Thus, "[t]he obvious impact of such limitations was confirmed at the hearing by the VE, who stated that [Plaintiff] could not work if Dr. [Ramos's] opinions were accepted." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

A.  The ALJ's Weighing of the Medical Evidence and the Treating Physician Rule

Plaintiff first claims the ALJ's decision to give "little weight" to the opinion of Dr. Ramos is contrary to the treating physician rule. The Court finds *Krauser v. Astrue*, 638 F.3d 1324 (10th Cir. 2011) is controlling and requires reversal and remand.[5]

A sequential, two-step inquiry governs an ALJ's evaluation of the medical opinions of a claimant's treating physician. The two-step inquiry is mandatory and each step of the inquiry is "analytically distinct." *Krauser*, 638 F.3d at 1330. First, the ALJ must decide whether the opinion is entitled to "controlling weight." If the opinion is "well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record," then the opinion must be given controlling weight. *Id*. A deficiency in either of these areas requires that the opinion not be given controlling weight. *Id*.[6]

When a treating physician opinion is not entitled to controlling weight, the inquiry does not end. The opinion is still entitled to deference. Thus, at the second step of the inquiry, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id.* As the Tenth Circuit has made clear: "[i]f

---

[5] Notably, the Commissioner wholly fails to address *Krauser* or the Tenth Circuit precedent upon which *Krauser* is based. Instead, the Commissioner cites inapposite decisions where the ALJ properly set forth reasons for rejecting the treating physician opinion. *See, e.g. Pisciotta v. Astrue*, 500 F.3d 1074, 1078-80 (10th Cir. 2007) (finding substantial evidence supported ALJ's decision that treating physician opinion was not entitled to controlling weight: ALJ cited record evidence of internal inconsistencies in treating physician opinion, demonstrated lack of support for opinions and also cited other record evidence to show that opinion was inconsistent with the record as a whole).

[6] The Commissioner incorrectly sets forth the standard governing the analysis as follows: "[A] treating physician's opinion is not entitled to controlling weight unless it is consistent with the entire record." *See* Brief in Support of the Commissioner's Decision [Doc. No. 23] at ECF p. 10.

this is not done, a remand is required." *Id*. The relevant factors governing the second step of the inquiry include: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Id*. at 1331 (citation omitted).

The treating physician rule is founded on the treating physician's unique perspective to the medical evidence due to both the duration and frequency of the treatment relationship. *Doyal*, 331 F.3d at 762. The rule "is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Id*. (citation omitted); *see also* 20 C.F.R. § 404.1527(c)(2) (addressing weight given to treating source due to his or her "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

As set forth, Dr. Ramos offered opinions as to both Plaintiff's mental and physical limitations. The Court addresses these opinions separately.

       **1.**       **Dr. Ramos's Opinion as to Plaintiff's Mental Limitations**

The ALJ first addressed Plaintiff's mental limitations. The ALJ referenced Dr. Ramos's opinion that Plaintiff "is unable to tolerate areas with crowds or loud noises" and "is unable to

handle stressful situations, making it difficult for her to seek employment." AR 43. The ALJ then made the following finding: "The undersigned affords Dr. Ramos little weight as it is not supported by the evidence of record as a whole." *Id.*

By giving "little weight" to Dr. Ramos's opinion, the ALJ essentially rejected it. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (noting that by giving "little weight" to the treating physician opinion, the ALJ effectively rejected it). As sole support, the ALJ stated perfunctorily that Dr. Ramos's opinion was unsupported by the record as a whole. AR 43.

The ALJ must give good reasons for the weight assigned to a treating physician opinion and those reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). Here, "the ALJ failed to explain or identify what the claimed inconsistencies were between [the opinion of Dr. Ramos] and the other substantial evidence in the record," and, therefore, "his reasons for rejecting [the] opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings." *Id.* at 1123 (citation omitted); *see also Ringgold v. Colvin*, -- F. App'x --, 2016 WL 1297817 at *3 (10th Cir. 2016) (ALJ's "conclusory reasoning, which did not explain how or why the specific limitations in [the treating physician's] opinion are inconsistent with the medical evidence or with [the claimant's] daily activities, was inadequate to explain the ALJ's rejection of the opinion").

Moreover, the ALJ impermissibly ended the analysis without addressing the second phase of the treating physician inquiry. *See Krauser*, 638 F.3d at 1330 (if the ALJ "simply stop[s] after the first step" a remand is required); *see also id.* at 1331 ("the ALJ's assessment of Dr. Lambert's [treating physician] opinion is patently inadequate for the distinct reason that it

8

ends halfway through the required two-step analysis: the ALJ simply concluded that 'Dr. Lambert's opinion . . . cannot be given controlling weight' and then *said no more about it . . . .*"). The ALJ did not address any of the relevant factors when giving Dr. Ramos's opinion "little weight." Under these circumstances, the ALJ's error requires a remand. As the Tenth Circuit has instructed, while "[i]t may be possible to assemble support for [the ALJ's] conclusion from parts of the record cited elsewhere in the ALJ's decision . . . that is best left for the ALJ himself to do in the proceedings on remand." *Krauser*, 638 F.3d at 1331; *see also Ringgold*, 2016 WL 1297817 at *2 (duty to supply reasons for rejecting a treating physician opinion "is the ALJ's; neither the Commissioner nor the courts may supply post-hoc reasons that the ALJ did not provide.).

### 2. Dr. Ramos's Opinion as to Plaintiff's Physical Limitations

Addressing Plaintiff's physical limitations, the ALJ cited the pertinent regulations governing the first step of the treating physician inquiry, determined the opinion of Dr. Ramos was "probative" and gave it "due consideration," but concluded the opinion was "not substantiated by the clinical findings and [was] inconsistent with the other evidence of record." AR 43. The ALJ elaborated somewhat stating:

> For example, on examination, the claimant has full strength of her extremities and no neurological deficits. She generally has full range of motion or only slightly limited range of motion of her spine and bilateral upper and lower extremities. She is able to pick up and manipulate small objects without difficulty. Her grip strength is 5/5. The x-rays of her joints are within normal limits and show no acute abnormalities. She ambulates with a stable gait at a moderately slow speed, without the use of assistive devices.

AR 43-44. The ALJ then stated that he would give "little weight to the opinions and findings of Dr. Ramos *where they are not supported by the signs, symptoms and medical findings in the record.*" AR 44 (emphasis added). The ALJ made a qualified rejection of Dr. Ramos's findings,

9

but did not explain which of the findings were unsupported. Nor did the ALJ cite any portion of the record setting forth the findings upon which he relied to demonstrate that Dr. Ramos's findings were unsupported.

As Plaintiff points out, it appears the ALJ relied on the consultative examination of Dr. Grace Gallardo to demonstrate the inconsistency of Dr. Ramos's opinion with the medical evidence of record. Notably, however, in the ALJ's initial summary of Dr. Gallardo's examination of Plaintiff, the ALJ acknowledges findings that are consistent with Dr. Ramos's findings including the following:

- [The claimant] was unable to perform adequately movements that require standing on one foot or tiptoe/heel walk. Her balance was poor on these exercises, but not in an ataxic way;

- The claimant is obese and seems to have mood problems that might influence her ability to work, besides not having regular medical care that could assist in keeping her symptoms enough under control to be able to work; and

- The claimant was able to seat [sic] comfortably during the visit, but could not stand for more than a short period of time.

AR 30 (citing Exhibit B6F). The ALJ then omitted any reference to Dr. Gallardo's additional findings when he addressed the weight given to Dr. Ramos's opinion. The ALJ's analysis, therefore, is faulty and a remand is required.[7]

Certainly, the ALJ is not required to discuss every piece of evidence, but "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."

---

[7] The ALJ's preference for Dr. Gallardo's opinion does not remedy the error. As the Tenth Circuit has observed, "[t]hough the ALJ could assign great weight to [the opinion of a nonexamining medical expert], the ALJ still had to address the opinions of [treating physicians]" and provide a legally sufficient explanation for favoring the nonexamining expert's opinion). *Lopez v. Colvin*, 642 F. App'x 826, 832 (10th Cir. 2016).

*Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) ("it is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").

Furthermore, the ALJ again stopped short his treating physician analysis. Significantly, the ALJ expressly referenced the applicable law and regulations governing the first phase of the treating physician inquiry but never referenced the second phase. *See* AR 43 ("Generally, the opinion of a treating physician is entitled to controlling weight, provided it is supported by medically acceptable clinical and diagnostic techniques and it is not inconsistent with other substantial evidence in the case (Social Security Ruling 96-2p)."). Indeed, nowhere in the ALJ's decision does he identify the second phase of the inquiry or the factors relevant thereto. As set forth above, pursuant to *Krauser*, these deficiencies in the ALJ's analysis requires a remand. *See also Clifton*, 79 F.3d at 1009 ("In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion[s] . . . and whether he applied the correct legal standards to arrive at th[ose] conclusion[s]."); *Conkle v. Astrue*, 297 F. App'x 803, 806 (10th Cir. 2008) ("Because the ALJ simply drew conclusions without analyzing and weighing the evidence and without making appropriate findings based on that evidence, we cannot review those conclusions.").

Disingenuously, the Commissioner offers post-hoc rationale, citing evidence of record that arguably supports the Commissioner's decision. But as the Commissioner is, or certainly should be aware, "[p]ost-hoc efforts of the Commissioner . . . to work through the omitted second step for the ALJ are prohibited[.]" *Krauser*, 638 F.3d. at 1330.

## VI. Conclusion

In sum, the ALJ's analysis of Dr. Ramos's treating physician opinion is legally flawed and not supported by substantial evidence. On remand, the ALJ is reminded that he must complete both analytically distinct phases of the treating physician analysis and support his analysis with specific citation to the record in a manner sufficient to allow meaningful review.

The decision of the Commissioner is REVERSED and the cause is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

ENTERED this 23rd day of August, 2016.

BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE